RALPH A. CAMPILLO  (Bar No. 70376)
ralph.campillo@sdma.com
MARIO HORWITZ (Bar No. 110965)
mario.horwitz@sdma.com
ERIC A. JOHNSTON (Bar No. 243234)
eric.johnston@sdma.com
SEDGWICK, DETERT, MORAN & ARNOLD LLP
801 South Figueroa Street, 18th Floor
Los Angeles, CA  90017-5556
Telephone:  (213) 426-6900
Facsimile:   (213) 426-6921

Attorneys for Defendant,
STRYKER CORPORATION
erroneously sued as STRYKER, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG CASAGRANDA,<br><br>Plaintiff,<br><br>vs.<br><br>STRYKER CORPORATION and Does 1 through 20, inclusive,<br><br>Defendants. | Case No.  08 CV 1370 BTM WMc<br><br>(State Court Case No. 37-2008-0085116-CU-PL-CTL)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS [FRCP RULE 12(b)(6)]; MEMORANDUM OF POINTS AND AUTHORITIES;**<br><br>**Date:  October 10, 2008**<br>**Time:  11 a.m.**<br>**Courtroom: 15** |

        NOTICE IS HEREBY GIVEN that on October 10, 2008, at 11:00 a.m. or as

soon thereafter as counsel may be heard in Courtroom No. 15 of the above-entitled

court, located at 880 Front Street, Room 4290, San Diego, California 92101,

1  Defendant, Stryker Corporation will and does hereby move the Court, pursuant to

2  Federal Rules of Civil Procedure, Rule 12(b)(6), for an order dismissing plaintiff's

3  Complaint in its entirety, on the basis that the Complaint, and each and every

4  cause of action contained therein, fails to state a claim upon which relief can be

5  granted.

6      This Motion is made on the grounds that plaintiff's claims are preempted by

7  the express preemption clause of the Medical Device Amendments to the Federal

8  Food, Drug and Cosmetic Act, as specifically held by the United States Supreme

9  Court in *Riegel v. Medtronic, Inc.*, 128 S. Ct. 999 (2008) and related authorities.

10     The Motion is further based on the ground that, apart from express

11 preemption, plaintiff's claims for strict liability on the basis of design defect, and

12 breach of implied warranty, independently fail because they are not available, as a

13 matter of law, under the substantive law of the State of California.

14

15     This Motion will be based upon this Notice, the attached Memorandum of

16 Points and Authorities, Defendant's Request for Judicial Notice, and upon such

17 other and further oral and documentary evidence as may be presented at the time

18 of the hearing.

19

20 DATED:  August 4, 2008          SEDGWICK, DETERT, MORAN &
                                    ARNOLD LLP
21

22
                                   By: _____
23                                     Ralph A. Campillo
                                       Mario Horwitz
24                                     Eric A. Johnston
                                       Attorneys for Defendant,
25                                     STRYKER CORPORATION

26

27

28

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION AND SUMMARY OF ARGUMENT.....................................1

II. ARGUMENT ........................................................................................2

A.    The FDA's Rigorous Premarket Approval Process .............................3

B.    The MDA Preempts State Imposed Regulations, Including Product
      Liability Claims, that Conflict with or Add to PMA Requirements
      for Class III Medical Devices .....................................................6

C.    The Supreme Court Recently Confirmed That The MDA Preempts
      Product Liability Claims For Class III, PMA Approved Medical
      Devices. ..................................................................................9

D.    Plaintiff's Strict Liability Design Defect and Warranty Claims
      Fail Independently of Preemption...............................................11

    1.    Strict Liability Design Defect Claims are Precluded.............................12

    2.    Plaintiff's Implied Warranty Claims Fail Based on Lack of
        Privity of Contract.....................................................................12

III. CONCLUSION..................................................................................13

i

**TABLE OF AUTHORITIES**

**PAGE**

<u>Cases</u>

*Adkins v. CYTYC Corporation,*
   No. 4:07CV00053, 2008 WL 2680474, at *2 (W.D. Va. July 3, 2008)..................................................................................11

*All West Electronics, Inc. v. M-B-W, Inc.,*
   64 Cal.App.4th 717, 725 (1998) ...............................................12

*Artiglio v. Superior Court,*
   22 Cal.App.4th 1388 (1994) .....................................................12

*Aulson v. Blanchard,*
   83 F.3d 1 (1st Cir. 1996)............................................................3

*Balistreri v. Pacifica Police Dept.,*
   901 F.2d 696 (9th. Cir. 1988) ....................................................3

*Bic Pen Corp. v. Carter,*
   251 S.W.3d 500, 508-09 (Tex. 2008) .......................................11

*Brooks v. Howmedica, Inc.,*
   273 F.3d 785 (8th Cir. 2001) ...............................................7, 10

*Buckman Co. v. Pl.'s Legal Comm.,*
   531 U.S. 341 (2001)....................................................................4

*Colacicco v. Apotex,*
   521 F.3d 253, 261-62 (3d Cir. 2008) .......................................11

*Cupek v. Medtronic, Inc.,*
   405 F.3d 421 (6th Cir. 2005); ...................................................10

*Despain v. Bradburn,*
   372 Ark. 272 (Sup. Ct. Ark. 2008) ..........................................11

i

**TABLE OF AUTHORITIES**

<u>**PAGE**</u>

*Evraets v. Intermedics Intraocular, Inc.,*
    29 Cal.App.4th 779 (1994) .................................................................12, 13

*Gomez v. St. Jude Medical Daig Division, Inc.,*
    442 F.3d 919 (5th Cir. 2006) ..............................................7, 8, 9, 10

*Horn v. Thoratec Corp.,*
    376 F.3d 163 (3d Cir. 2004)...............................................5, 7, 8, 10

*Hufft v. Horowitz,*
    4 Cal.App.4th 8 (1992) ...................................................................12

*Kemp v. Medtronic, Inc.,*
    231 F.3d at 224-27 ....................................................................8, 9, 10

*Knisley v. Medtronic, Inc.,*
    546 U.S. 935 (2005) .........................................................................10

*Martin v. Medtronic, Inc., ,*
    254 F.3d 573 (5th Cir. 2001) ....................................................8, 10

*McMullen v. Medtronic, Inc.*
    421 F.3d 482 (7th Cir. 2005); ...........................................................8

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996) .........................................................................10

*Mendes v. Medtronic, Inc.,*
    18 F.3d 13 (1st Cir. 1994)..........................................................6, 8, 9

*MGIC Indem. Corp. v. Weisman,*
    803 F.2d 500, 504 (9th Cir. 1986) ...........................................2, 6

*Mitchell v. Collagen Corp.,*
    126 F.3d 902 (7th Cir. 1997) ....................................................5, 7, 9, 10

**TABLE OF AUTHORITIES**

**PAGE**

*Morton v. Centerpulse Orthopedics, Inc.,*

    2005 WL 1366494, at *3 (E.D. Cal. 2005) ................................................8

*O'Neal v. Smithkline Beecham Corp.,*

    No. CIV S-06-1063 (FCD/DAD), 2008 WL 1721891, *6 (E.D. Cal.

    April 10, 2008 ........................................................................................11

*Papike v. Tambrands Inc.*

    107 F.3d 737 (9th Cir. 1997) ...................................................................9

*Plenger v. Alza Corp.,*

    11 Cal.App.4th 349 (1992) ....................................................................12

*Riegel v. Medtronic, Inc.,*

    128 S.Ct. 999 (2008) ....................................... 2, 3, 4, 5, 9, 10, 11

*Riegel v. Medtronic, Inc.,*

    451 F.3d 104 (2d Cir. 2006) ..............................................................2, 4, 5

*Schmier v. United States Court of Appeals,*

    279 F.3d 817 (9th Cir. 2002) ..................................................................3

*Scott v. Ciba Vision,*

    38 Cal.App.4th 307 (1995) ..............................................................6, 8, 9

*Steele v. Collagen Corp.,*

    54 Cal.App.4th 1474 (1997) ...................................................................8

**Statutes**

21 C.F.R. § 814.20.....................................................................................4

21 C.F.R. §808.1(d)..................................................................................12

21 U.S.C. § 360c et seq ............................................................................3

21 U.S.C. § 360c(a)(1)(A) .........................................................................3

21 U.S.C. § 360c(a)(1)(B) .........................................................................3

## TABLE OF AUTHORITIES

**PAGE**

21 U.S.C. § 360c(a)(1)(C)(ii) ...................................................................................3

21 U.S.C. § 360k.................................................................................................2, 4

21 U.S.C. § 361k(A);.............................................................................................4

21 U.S.C. §360k(a) ............................................................................................6, 9

## Other Authorities

H.R. Rep. No. 94-853, at 12, 45 (1976) ................................................................6

## Rules

Federal Rule of Civil Procedure 12(b)(6) ..........................................................2, 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION AND SUMMARY OF ARGUMENT

This case involves product liability claims arising from the implantation of an artificial hip prosthesis known as the Trident™ ceramic-on-ceramic hip replacement system ("Trident™").[1]  Plaintiff, Greg Casagranda, alleges that on November 15, 2005, he underwent a total hip replacement surgery during which the Trident system was implanted by his surgeon.  The Complaint further alleges that in May 2006, the implant began to "squeak", ultimately requiring a second surgery to replace it on October 9, 2007.

As more fully explained below, the Trident™ is classified by the Federal Food and Drug Administration ("FDA") as a Class III device.  Its design, manufacturing and labeling was thoroughly supervised by FDA pursuant to the federal Pre-Market Approval ("PMA") application and process.  The PMA process involves submission of 1) an investigational device exemption (IDE) to permit investigational clinical trials of new Class III medical devices, followed by 2) a PMA application which the FDA must review and approve before it will authorize marketing of the device.  The IDE relevant to the Trident system was submitted to FDA on July 8, 1996 and the PMA application modules were submitted beginning on December 16, 1999.  In total, the PMA for the Trident system, including the clinical trial information contained in the IDE application, comprised over 17,500 pages of documentation submitted to FDA to enable it to conduct a complete and thorough review of the safety and effectiveness of the device.[2]

---

[1] The Trident system is manufactured and marketed by Howmedica Osteonics Corp. ("HOC"), a wholly owned subsidiary of defendant Stryker Corporation. Stryker is not and has never been involved, in any manner, with the development, design, manufacture or sale of this product, and is not a proper party defendant.

[2] Very few medical devices – less than 5% - undergo this process, which is

1

1    Approval to market the Trident system was granted by FDA on February 3,

2    2003, more than six years after the commencement of clinical trials and three years

3    after submission of the initial PMA application.[3] The Trident system remains

4    subject to continuing FDA oversight and control, and its PMA approval has never

5    been suspended, withdrawn or revoked by the FDA.

6        The Supreme Court recently confirmed that, as to Class III devices like the

7    Trident™ that have undergone the rigorous PMA process, most common law

8    product liability claims are expressly preempted by the Medical Device

9    Amendments of 1976 ("MDA") (21 U.S.C. § 360k) to the Federal Food, Drug and

10   Cosmetics Act. *Riegel v. Medtronic, Inc.*, 128 S. Ct. 999 (2008). Plaintiff has

11   asserted three causes of action but under *Riegel*, his claims of strict liability,

12   negligence and implied warranty are preempted.

13                              **II.**

14                          **ARGUMENT**

15       A Rule 12(b)(6) motion tests the legal sufficiency of the claims stated in the

16   complaint. A complaint may be dismissed under Rule 12(b)(6) if defects

17   appearing on the face of the pleading or in matters judicially noticeable

18   demonstrate a failure to state a claim upon which relief can be granted. *See,*

19   *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

20       Dismissal is proper where there is either a "lack of a cognizable legal

21   theory" or "the absence of sufficient facts alleged under a cognizable legal

22   _____

23   _____

24   limited to the most complex and technologically advanced devices that present
     true innovation, but also present risk of injury or illness and are important to
     sustaining life or health. *See Riegel v. Medtronic, I nc.*, 128 S. Ct. 999, 1003

25   (2008); *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 111-12 (2d Cir. 2006), aff'd, 128
     S.Ct. 999 (2008).

26

27   [3] See http://www.fda.gov/cdrh/pdf/p000013a.pdf. (Trident™'s PMA approval
     letter posted on the FDA's website).

28

1    theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th. Cir. 1988).

2    Though the court must accept as true all material allegations in the complaint, it

3    need not accept conclusory allegations or unwarranted inferences. *Schmier v.*

4    *United States Court of Appeals*, 279 F.3d 817, 820 (9th Cir. 2002).  Bald

5    assertions and unsupportable conclusions can be disregarded. *Aulson v.*

6    *Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

7        Dismissal pursuant to Rule 12(b)(6) is proper here, because plaintiff's

8    claims are all preempted by federal law.

9        **A.    The FDA's Rigorous Premarket Approval Process**

10        The FDA's regulatory regime has established "various levels of oversight

11    for medical devices, depending on the risks they present." *Riegel*, 128 S. Ct. at

12    1003.  Under the 1976 Medical Devices Amendments[4], medical devices are placed

13    into one of three "classes."  Class I devices such as elastic bandages, pose little or

14    no risk of injury, and are subject only to "general controls," applicable to all

15    devices.  21 U.S.C. § 360c(a)(1)(A).  Class II devices, such as wheelchairs, pose

16    potentially greater risks and manufacturers of such devices must comply with

17    federal performance regulations known as "special controls."  21 U.S.C.

18    § 360c(a)(1)(B).  Class III devices, such as the Trident™, "receiv[e] the most

19    federal oversight" because they "'present[] a potential unreasonable risk of illness

20    or injury'" or are "'for a use in supporting or sustaining human life or for a use

21    which is of substantial importance in preventing impairment of human health.'"

22    *Riegel*, 128 S. Ct. at 1003 (*quoting* 21 U.S.C. § 360c(a)(1)(C)(ii)).

23

24    ───────────────

25        [4] In 1976, Congress enacted the Medical Device Amendments to the Federal
     Food, Drug and Cosmetic Act ("FDCA").  21 U.S.C. § 360c et seq.  The MDA
26    expanded FDA's authority to regulate medical devices. *See Riegel*, 128 S. Ct. at
     1002-03 (noting the MDA "swept back some state obligations and imposed a
27    regime of detailed federal oversight.").

28

1    The rigorous regime of the PMA process[5] is required of only a *very* small

2    subset of Class III devices. *See Riegel*, 128 S. Ct. at 1004; *Riegel*, 451 F.3d at

3    111-12 (noting that in 2005 only 1% of Class III medical devices were subject to

4    the PMA process). The vast majority of Class III medical devices are approved

5    through a less rigorous process known as a § 510(k) premarket notification

6    process. *Riegel*, 128 S. Ct. at 1004 (explaining that in 2005 when the FDA

7    approved 3,148 devices through the § 510(k) process, it approved only 32 devices

8    through the PMA process).

9        Prior to approval, the small subset of Class III devices subject to PMA, like

10   the Trident™ device, go through an extensive evaluation process that is entirely

11   different from the FDA's 510(k) premarket notification clearance process, which

12   applies to the vast majority of medical devices. *See* 21 U.S.C. § 360(k). Pursuant

13   to authority vested in it by the MDA, FDA has promulgated numerous regulations

14   that delineate PMA requirements for Class III medical devices. *See, Buckman Co.*

15   *v. Pl.'s Legal Comm.*, 531 U.S. 341, 343 (2001). These require a PMA application

16   to include comprehensive data from which FDA can make a reasoned

17   determination of the device's safety and efficacy, including, without limitation,

18   human clinical trials, design specifications, manufacturing processes and quality

19   controls, and proposed labeling and advertising. 21 C.F.R. § 814.20. The PMA

20   process requires the manufacturer to submit extensive information and the "FDA

21

22

23   _____

24   [5] Congress devised the PMA process because it was important to ensure that manufacturers minimize patient risk yet continue to innovate and develop new devices. Congress charged FDA with ensuring safety and efficacy, but also

25   enacted an express preemption provision to prevent states from imposing additional or different medical device requirements, whether directly, or through

26   product liability litigation. 21 U.S.C. § 361k(A); *see generally, Riegel*, 128 S. Ct. at 1003-05; *Riegel*, 451 F.3d at 109-12; H.R. Rep. No. 94-853, at 12, 45 (1976)

27   (noting the "general prohibition on non-federal regulation" in the statute).

28

4

1  spends an average of 1,200 hours reviewing each application." *Riegel*, 128 S. Ct.
2  at 1004.

3      After reviewing an application, FDA "grants premarket approval *only* if it
4  finds there is a 'reasonable assurance' of the device's safety and effectiveness.'"
5  *Riegel*, 128 S. Ct. at 1004 (*citing* 21 U.S.C. § 360e(d)) (emphasis added); *Riegel*,
6  451 F.3d at 109.  The PMA process "includes review of the device's proposed
7  labeling" and "must determine that the proposed labeling is neither false nor
8  misleading." *Riegel*, 128 S. Ct. at 1004  (*citing* 21 U.S.C. §§ 360c(a)(2)(B),
9  360e(d)(1)(A)).

10      FDA retains control of the device beyond the initial PMA approval.  A
11  PMA approval includes detailed specifications.  A manufacturer is prohibited from
12  making changes to "design specifications, manufacturing processes, labeling, or
13  any other attribute, that would affect safety or effectiveness" without first
14  obtaining FDA's approval. *Riegel*, 128 S. Ct. at 1005 (citing 21 U.S.C. §
15  360e(d)(6)(A)(i)).  *See Horn v. Thoratec Corp.*, 376 F.3d 163, 179 (3d Cir. 2004);
16  *Mitchell v. Collagen Corp.*, 126 F.3d 902, 913 (7th Cir. 1997).  Following
17  approval, the devices are subject to reporting requirements, including informing
18  FDA of studies and investigations, or incidents where the device caused serious
19  injury or could have. *See Riegel*, 128 S. Ct. at 1005.  FDA retains the authority to
20  withdraw approval based on such new information. *Id.*

21      Before Howmedica marketed the Trident™, it underwent FDA's exacting
22  and comprehensive PMA process and, after demonstrating that the device was safe
23  and effective for its intended use, received FDA approval.[6]

24  _____

25    [6] See http://www.fda.gov/cdrh/pdf/p000013a.pdf.  (Trident™'s PMA approval
26  letter posted on the FDA's website).

27      Defendant, through its Request for Judicial Notice filed concurrently herewith,
   asks that the Court take judicial notice of the FDA letter establishing the
28  Trident™'s premarket approval by the FDA.  On a motion to dismiss, the court

**B.**　**The MDA Preempts State Imposed Regulations, Including Product Liability Claims, that Conflict with or Add to PMA Requirements for Class III Medical Devices**

When Congress enacted the MDA and conferred upon FDA comprehensive regulatory authority over medical devices, it also took steps to "prevent state requirements from unduly burdening interstate commerce." *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 16 (1st Cir. 1994). Congress did so to preserve the uniformity of the federal regulatory scheme by including a "general prohibition on non-federal regulation." H.R. Rep. No. 94-853, at 12, 45 (1976). This **express preemption** provision provides as follows:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use **any requirement** –
>
> 　　(1)　which is **different from, or in addition to**, any requirement applicable under this chapter to the device, and
>
> 　　(2)　which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. §360k(a). (Emphasis added.)

Although the MDA Preemption Clause does not specifically mention tort claims, "virtually every court which has addressed this issue has concluded that preemption under the MDA extends to state court tort claims." *Scott v. Ciba Vision*, 38 Cal.App.4th 307, 316-17 (1995). *See also, Kanter v. Warner Lambert*,

_____

may take judicial notice of matters of public record outside of the pleadings. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

6

1   99 Cal App.4th 780, 792-793 (2002); *Gomez v. St. Jude Medical Daig Division,*

2   *Inc.,* 442 F.3d 919, 930 (5th Cir. 2006). This application of the MDA Preemption

3   Clause to products liability claims is grounded in sound public policy.

4             State common law tort actions threaten the statutory

5             framework for the regulation of medical devices,

6             particularly with regard to FDA's review and approval

7             of product labeling. State actions are not characterized

8             by centralized expert evaluation of device regulatory

9             issues. Instead, they encourage, and in fact require, lay

10            judges and juries to second-guess the balancing of

11            benefits and risks of a specific device to their intended

12            patient population -- the central role of FDA --

13            sometimes on behalf of a single individual or group of

14            individuals. ... [T]his situation can harm the public

15            health by retarding research and development and by

16            encouraging "defensive labeling" by manufacturers to

17            state liability, resulting in scientifically unsubstantiated

18            warnings and under utilization of beneficial treatments.

19   *Horn*, 376 F.3d at 178 (citing FDA *Amicus Curiae* letter brief at 25-26).

20       The great weight of state and federal judicial authority establishes that

21   FDA's pre-market approval constitutes FDA's review and regulation of a Class III

22   device's design, testing, intended use, manufacturing methods, performance

23   standards and labeling. The same authority establishes that these regulations are

24   "specific to the product" so any state court judgment arising out of products

25   liability claims "would constitute...a requirement 'different from, or in addition

26   to' the standard required by federal authority." *Mitchell*, 126 F.3d at 913. *See*

27   *also, Horn, supra,* 376 F.3d at 179; *Brooks v. Howmedica, Inc.,* 273 F.3d 785 (8th

28

1   Cir. 2001); *Martin v. Medtronic, Inc.*, 254 F.3d 573 (5th Cir. 2001); *Kemp v.*
2   *Medtronic, Inc.*, 231 F.3d 216 (6th Cir. 2000).

3       Courts across the nation have considered the impact of the MDA
4   Preemption Clause on these types of claims in similar lawsuits involving PMA-
5   approved Class III medical devices.  These courts have almost universally found
6   that the MDA Preemption Clause preempts such claims.

7       The MDA Preemption Clause preempts claims of defective design, whether
8   based on negligence or strict liability.  *See, e.g., Steele v. Collagen Corp.*, 54
9   Cal.App.4th 1474, 1488-89 (1997) (FDA approved design constitutes specific
10  federal requirement giving rise to preemption).  *See, also, Gomez*, 442 F.3d at 930;
11  *Horn*, 376 F.3d at 176-77; *Martin*, 254 F.3d at 584 (FDA determination that the
12  benefits of the device outweigh the risks renders design defect judgments
13  "different" requirements under the MDA); *Kemp*, 231 F.3d at 230.

14      Similarly, the MDA Preemption Clause preempts claims of negligent
15  manufacture, testing or inspection of a Class III device, and strict liability
16  "manufacturing defect" claims.  *See, e.g., Mendes*, 18 F.3d at 19 (manufacturing-
17  based claims preempted since a fact finder could apply standards differing from or
18  adding to those imposed by FDA); *see, also, Horn*, 376 F.3d at 179 (negligence or
19  strict liability manufacturing claims amount to a state substantive requirement
20  different from or in addition to FDA requirements and are preempted); *Martin*,
21  254 F.3d at 584; *Morton v. Centerpulse Orthopedics, Inc.*, 2005 WL 1366494, at
22  *3 (E.D. Cal. 2005).

23      The MDA Preemption Clause also preempts "failure to warn" claims.  *Scott*,
24  *supra*, at 327 (PMA labeling requirements "are intended to establish, and did
25  establish, the maximum consumer protection regarding the adequacy of
26  warnings.").  *See, also, McMullen v. Medtronic, Inc.* 421 F.3d 482, 488 (7th Cir.
27  2005); *Horn, supra*, at 163, 176-77; *Brooks, supra*, at 796-97; *Martin, supra*, 254
28

1   F.3d at 585; *Kemp, supra*, 231 F.3d at 236; *Mitchell, supra*, 126 F.3d at 913-14;

2   *Papike v. Tambrands Inc.* 107 F.3d 737, 743 (9th Cir. 1997).

3         The MDA Preemption Clause also preempts breach of implied warranty

4   claims. *Scott, supra*, at 324 ("[e]stablished precedent holds that implied warranty

5   claims premised on inadequate warnings are preempted by the MDA"); *Gomez,*

6   *supra*, at 931-32; *Mitchell, supra*, at 915 (state judgment for breach of implied

7   warranty based on standards other than those permitted by FDA would necessarily

8   interfere with the PMA process); *Mendes,* 18 F.3d at 20.

9         To summarize, the vast consensus of judicial authority consistently holds

10  that the federal regulatory scheme, and the requirements imposed on the

11  manufacturers of Class III devices subject to the PMA process, preempt state court

12  product liability claims.

13        **C.    The Supreme Court Recently Confirmed That The MDA**

14              **Preempts Product Liability Claims For Class III, PMA Approved**

15              **Medical Devices.**

16        Plaintiff's claims are preempted for the reasons set forth in the Supreme

17  Court's decision in *Riegel.* Specifically, because Plaintiff's lawsuit would impose

18  different or additional requirements on a PMA Class III medical device, Plaintiff's

19  claims are preempted by federal law. *Riegel,* 128 S. Ct. at 1007, 1011.

20        In *Riegel*, the Supreme Court reached its conclusion in reliance on the MDA

21  express preemption provision, which mandates "that no State 'may establish or

22  continue in effect with respect to a device . . . any requirement' relating to safety

23  and effectiveness that is different from, or in addition to, federal requirements."

24  *Riegel*, 128 S. Ct. at 1010 (citation omitted). The Court acknowledged that

25  Congress enacted this express preemption provision to prevent states from

26  imposing additional or different medical device requirements, <u>whether directly or</u>

27  <u>through product liability litigation.</u> *See* 21 U.S.C. §361k(a); *see generally Riegel,*

28  128 S. Ct. at 1006, 1010. The Supreme Court found, as did many courts before it,

that the PMA process imposes device-specific "requirements" relating to safety and effectiveness. *See Riegel*, 128 S. Ct. at 1007 ("Premarket approval . . . imposes 'requirements' under the MDA as we interpreted it in [*Medtronic, Inc*. v. *Lohr*, 518 U.S. 470 (1996)]. Unlike the general labeling duties, premarket approval is specific to individual devices. And it is in no sense an exemption from federal safety review – it *is* federal safety review.") (emphasis in original).

The Court then determined that the plaintiffs' state law claims were "requirements" that differed from the federal PMA requirements relating to Class III devices: "State tort law that requires a manufacturer's [devices] to be safer, but hence less effective, than the model the FDA has approved disrupts the federal scheme no less than state regulatory law to the same effect." Id. at 1008. The Court, therefore, found that the MDA's preemption clause "bars common-law claims challenging the safety and effectiveness of a medical device given premarket approval by the [FDA]"[7] *id.* at 1002, and dismissed the plaintiffs' claims for (1) failure to warn; (2) defective design; (3) negligence and recklessness; (4) breach of implied warranties; (5) breach of implied warranty of fitness; and (6) breach of implied warranty of merchantability, *id.* at 1006-07.

As in *Riegel*, Plaintiff's proposed claims here are expressly preempted because they assert "general tort duties of care" and claims that "a device was

---

[7] The Supreme Court's holding comports with the legal precedent developed in most circuits for many years. Most circuits that had addressed the issue found these common law claims preempted for Class III devices under the MDA. *See, Mitchell*, 126 F.3d 902; *Gomez*, 442 F.3d 919 (5th Cir. 2006); *Cupek v. Medtronic, Inc.*, 405 F.3d 421 (6th Cir. 2005); *Knisley v. Medtronic, Inc.*, 546 U.S. 935 (2005); *Horn*, 376 F.3d 163, 178 ("State common law tort actions threaten the statutory framework for the regulation of medical devices . . . they encourage, and in fact require, lay judges and juries to second-guess the balancing of benefits and risks of a specific device to their intended patient population – the central role of FDA – sometimes on behalf of a single individual or group of individuals."); *Brooks v. Howmedica, Inc.*, 273 F.3d 785 (8th Cir. 2001) (en banc); *Martin*, 254 F.3d 573; *Kemp*, 231 F.3d at 224-27.

designed, labeled, or manufactured in an unsafe or ineffective manner" and impose different or additional requirements related to safety and effectiveness. *Riegel*, 128 S. Ct. at 1010. With regard to the Trident™ device, FDA imposed the same requirements regarding safety and effectiveness as on the *Riegel* device – both are Class III devices that were subjected to the PMA process. Therefore, just as in *Riegel*, plaintiff Casagranda's common law claims impose different or additional requirements on the device, which is expressly prohibited by the MDA. *See Riegel*, 128 S. Ct. at 1007.

Following *Riegel*, this Court should determine that each cause of action here is preempted because they assert additional or different requirements based on strict liability (First Cause of Action) negligence (Second Cause of Action) and breach of implied warranty (Third Cause of Action).[8]

**D.   Plaintiff's Strict Liability Design Defect and Warranty Claims
Fail Independently of Preemption**

Plaintiff's product liability claims are unquestionably preempted by the

---

[8] Following the Supreme Court's decision in late February, other courts have recognized the clear holding of *Riegel*. *See e.g., Colacicco v. Apotex*, 521 F.3d 253, 261-62 (3d Cir. 2008) ("An express pre-emption situation is exemplified by [*Riegel*], where [the Supreme Court] held that in light of [the express preemption provision of the MDA], plaintiff claims that a [device] was designed, labeled, and manufactured in a way that violated New York common law were preempted."); *O'Neal v. Smithkline Beecham Corp.*, No. CIV S-06-1063 (FCD/DAD), 2008 WL 1721891, *6 (E.D. Cal. April 10, 2008) (denying reconsideration of a decision finding preemption and stating *Riegel* found "that federal law preempted breach of implied warranty; negligence in the design, testing, inspection, distribution, labeling, manufacturing not premised on the theory that defendant violated federal law"); *Bic Pen Corp. v. Carter*, 251 S.W.3d 500, 508-09 (Tex. 2008) (holding design defect claim preempted for the reasons articulated in *Riegel*); *Despain v. Bradburn*, 372 Ark. 272 (Sup. Ct. Ark. 2008) (reversing decision "in light of the Supreme Court's conclusion in *Riegel* [] that the state-law tort claims are, in fact, pre-empted by the MDA"). *See also, Adkins v. CYTYC Corporation*, No. 4:07CV00053, 2008 WL 2680474, at *2 (W.D. Va. July 3, 2008) (*Riegel* preempted state law tort claims for negligent design, manufacturing and labeling, against the manufacturer of Class III PMA-approved ablation device).

1    Medical Device Amendments to the FDCA. However, even if his claims were not

2    preempted, several of them fail based upon the legal principals set forth below.

3                    **1.  Strict Liability Design Defect Claims are Precluded**

4            In California, the manufacturer of an implanted medical device available

5    only by prescription is immune from strict liability design defect pursuant to

6    RESTATEMENT (SECOND) of TORTS §402(A), comment k, which recognizes

7    the inherent risks endemic to such products, combined with the public health

8    interests in encouraging their development. *See, e.g., Artiglio v. Superior Court*,

9    22 Cal.App.4th 1388 (1994); *Hufft v. Horowitz*, 4 Cal.App.4th 8 (1992); *Plenger*

10   *v. Alza Corp.*, 11 Cal.App.4th 349 (1992).

11                   **2.  Plaintiff's Implied Warranty Claims Fail Based on Lack of**

12                        **Privity of Contract**

13           Plaintiff's third cause of action for breach of implied warranty fails because

14   there was no privity of contract between plaintiff and HOC. Privity of contract is

15   a prerequisite in California for recovery on a theory of breach of implied warranty.

16   The general rule is that privity of contract is required and that there is no privity

17   between the original seller and a subsequent purchaser who is in no way a party to

18   the original sale. *See, e.g., All West Electronics, Inc. v. M-B-W, Inc.*, 64

19   Cal.App.4th 717, 725 (1998).

20           In *Evraets v. Intermedics Intraocular, Inc.*, 29 Cal.App.4th 779 (1994),

21   plaintiff was injured by an intraocular lens that had been surgically implanted in

22   his eye. He sued the manufacturer and distributor of the device for, among other

23   things, breach of implied warranty, and his suit was dismissed by the trial court on

24   defendant's demurrer. After citing to the FDA preemption regulation (21 C.F.R.

25   §808.1(d)), and the general rule concerning privity of contract, the court stated:

26   "There is no privity between plaintiff and defendants. Plaintiff did not rely on

27   defendants' judgment that an intraocular device was appropriate for him. Rather,

28   he relied upon his physician's skill or judgment to select or furnish a suitable

                                        12

1  product. Thus, plaintiff cannot sue the manufacturers, suppliers, or distributors of

2  the lens on an implied warranty of fitness theory." *Evraets*, 29 Cal.App.4th at

3  p.788.

4                                    **III.**

5                              **CONCLUSION**

6       Plaintiff's complaint should be dismissed in its entirety because each cause

7  of action is preempted by federal law. Further, Plaintiff's causes of action for

8  strict liability design defect and breach of implied warranty are not available, as a

9  matter of law, against the manufacturer of a prescription, implantable medical

10 device.

11 DATED:  August 4, 2008          SEDGWICK, DETERT, MORAN &
                                    ARNOLD LLP
12

13                                  By:
14                                     Ralph A. Campillo
                                       Mario Horwitz
15                                     Eric A. Johnston
                                       Attorneys for Defendant,
16                                     STRYKER CORPORATION

17

18

19

20

21

22

23

24

25

26

27

28

                                      13

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Sedgwick, Detert, Moran & Arnold LLP, 801 South Figueroa Street, 18th Floor, Los Angeles, California 90017-5556. On August 4, 2008, I served the within document(s):

**NOTICE OF MOTION AND MOTION TO DISMISS [FRCP RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

☐    FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

☒    MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐    OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via .

Kevin F. Quinn, Esq.                    Attorney For Plaintiff
Brett J. Schreiber, Esq.                Greg Casagranda
THORSNES BARTOLOTTA McGUIRE
2550 Fifth Avenue, Suite 1100
San Diego, California 92103

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 4, 2008, at Los Angeles, California.

Jeanine Johnson

14