RALPH A. CAMPILLO (Bar No. 70376)
ralph.campillo@sdma.com
MARIO HORWITZ (Bar No. 110965)
mario.horwitz@sdma.com
ERIC A. JOHNSTON (Bar No. 243234)
eric.johnston@sdma.com
SEDGWICK, DETERT, MORAN & ARNOLD LLP
801 South Figueroa Street, 18th Floor
Los Angeles, CA 90017-5556
Telephone: (213) 426-6900
Facsimile: (213) 426-6921

Attorneys for Defendant,
STRYKER CORPORATION
erroneously sued as STRYKER, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG CASAGRANDA,<br><br>Plaintiff,<br><br>vs.<br><br>STRYKER CORPORATION and Does 1 through 20, inclusive,<br><br>Defendants. | Case No. 08 CV 1370 BTM WMc<br><br>(State Court Case No. 37-2008-0085116-CU-PL-CTL)<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP RULE 12(b)(6)**<br><br>Date: October 10, 2008<br>Time: 11:00 a.m.<br>Courtroom: 15 |

NOTICE IS HEREBY GIVEN that in connection with the hearing on its Motion to Dismiss, Defendant Stryker Corporation hereby requests, pursuant to Federal Rules of Evidence Rule 201, that the Court take judicial notice of the approval by the Food and Drug Administration of the premarket approval

1

1  application ("PMA") for the Osteonics® ABC System and Trident™ System.
2  Judicial notice may be taken of facts not subject to reasonable dispute and
3  "capable of accurate and ready determination by resort to sources whose accuracy
4  cannot reasonably be questioned." Fed. R. Evid. 201(b). Additionally, judicial
5  notice of agency action is proper where the action is officially published and thus
6  ascertainable and verifiable. See *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d
7  453, 457 (5th Cir. 2005).

8  Attached hereto as Exhibit "A" is a true and correct copy of a letter dated
9  February 3, 2003 from the Director of the Division of General, Restorative, and
10 Neurological Devices of the Office of Device Evaluation, Center for Devices and
11 Radiological Health at the FDA, notifying Howmedica Osteonics Corporation that
12 its PMA application for the Osteonics® ABC System and Trident™ System was
13 approved by the Food and Drug Administration on February 3, 2003. This
14 approval letter is posted on the FDA's website at
15 http://www.fda.gov/cdrh/pdf/p000013a.pdf.

17 DATED: August 4, 2008        SEDGWICK, DETERT, MORAN & ARNOLD LLP

19                              By: /s/ Ralph A. Campillo
                                Ralph A. Campillo
                                Mario Horwitz
                                Eric A. Johnston
                                Attorneys for Defendant,
                                STRYKER CORPORATION

# EXHIBIT A



DEPARTMENT OF HEALTH & HUMAN SERVICES     Public Health Service

FEB 3 2003

Food and Drug Administration
9200 Corporate Boulevard
Rockville MD 20850

Mr. William J. Cymbaluk
Vice President, Regulatory Affairs, Quality Assurance and Clinical Research
Howmedica Osteonics Corporation
359 Veterans Boulevard
Rutherford, New Jersey 07070-2584

Re: P000013
    Osteonics® ABC System and Trident™ System
    Filed: March 2, 2000
    Amended: March 10, April 19, May 5, June 2, June 6, June 8, August 21,
         September 18, and September 21, 2000; March 30, June 5, 2001;
         March 15, November 12, and November 22, 2002
    Procode: MRA

Dear Mr. Cymbaluk:

The Center for Devices and Radiological Health (CDRH) of the Food and Drug Administration (FDA) has completed its review of your premarket approval application (PMA) for the Osteonics® ABC System and Trident™ System. These devices are indicated for patients requiring primary total hip arthroplasty due to painful disabling joint disease of the hip resulting from non-inflammatory degenerative arthritis (osteoarthritis, avascular necrosis, traumatic arthritis, slipped capital epiphysis, pelvic fracture, femoral fracture, failed fracture fixation, or diastrophic variant). We are pleased to inform you that the PMA is approved. You may begin commercial distribution of the device in accordance with the conditions described below and in the "Conditions of Approval" (enclosed).

The sale, distribution, and use of this device are restricted to prescription use in accordance with 21 CFR 801.109 within the meaning of section 520(e) of the Federal Food, Drug, and Cosmetic Act (the act) under the authority of section 515(d)(1)(B)(ii) of the act. FDA has also determined that, to ensure the safe and effective use of the device, the device is further restricted within the meaning of section 520(e) under the authority of section 515(d)(1)(B)(ii) insofar as the sale, distribution, and use must not violate sections 502(q) and (r) of the act.

In addition to the postapproval requirements outlined in the enclosure, you have agreed to provide long-term (i.e., 5 year) data in a postapproval report. The results of this long-term data must be reflected in the product labeling (via supplement) when the post-approval study is completed.

Page 2 - Mr. William J. Cymbaluk

CDRH does not evaluate information related to contract liability warranties, however you should be aware that any such warranty statements must be truthful, accurate, and not misleading, and must be consistent with applicable Federal and State laws.

CDRH will notify the public of its decision to approve your PMA by making available a summary of the safety and effectiveness data upon which the approval is based. The information can be found on the FDA CDRH Internet HomePage located at http://www.fda.gov/cdrh/pmapage.html. Written requests for this information can also be made to the Dockets Management Branch, (HFA-305), Food and Drug Administration, 5630 Fishers Lane, Rm. 1061, Rockville, MD 20852. The written request should include the PMA number or docket number. Within 30 days from the date that this information is placed on the Internet, any interested person may seek review of this decision by requesting an opportunity for administrative review, either through a hearing or review by an independent advisory committee, under section 515(g) of the Federal Food, Drug, and Cosmetic Act (the act).

Failure to comply with the conditions of approval invalidates this approval order. Commercial distribution of a device that is not in compliance with these conditions is a violation of the act.

You are reminded that, as soon as possible and before commercial distribution of your device, you must submit an amendment to this PMA submission with copies of all approved labeling in final printed form. The labeling will not routinely be reviewed by FDA staff when PMA applicants include with their submission of the final printed labeling a cover letter stating that the final printed labeling is identical to the labeling approved in draft form. If the final printed labeling is not identical, any changes from the final draft labeling should be highlighted and explained in the amendment.

All required documents should be submitted in triplicate, unless otherwise specified, to the address below and should reference the above PMA number to facilitate processing.

       PMA Document Mail Center (HFZ-401)
       Center for Devices and Radiological Health
       Food and Drug Administration
       9200 Corporate Boulevard
       Rockville, Maryland 20850

Page 3 - Mr. William J. Cymbaluk

If you have any questions concerning this approval order, please contact Mr. Peter Allen at (301) 594-2036.

Sincerely yours,

Celia M. Witten, Ph.D., M.D.
Director
Division of General, Restorative
 and Neurological Devices
Office of Device Evaluation
Center for Devices and
 Radiological Health

Enclosure

Last Modified: 1-31-02

# CONDITIONS OF APPROVAL

**PREMARKET APPROVAL APPLICATION (PMA) SUPPLEMENT.** Before making any change affecting the safety or effectiveness of the device, submit a PMA supplement for review and approval by FDA unless the change is of a type for which a "Special PMA Supplement-Changes Being Effected" is permitted under 21 CFR 814.39(d) or an alternate submission is permitted in accordance with 21 CFR 814.39(e) or (f). A PMA supplement or alternate submission shall comply with applicable requirements under 21 CFR 814.39 of the final rule for Premarket Approval of Medical Devices.

All situations that require a PMA supplement cannot be briefly summarized; therefore, please consult the PMA regulation for further guidance. The guidance provided below is only for several key instances.

A PMA supplement must be submitted when unanticipated adverse effects, increases in the incidence of anticipated adverse effects, or device failures necessitate a labeling, manufacturing, or device modification.

A PMA supplement must be submitted if the device is to be modified and the modified device should be subjected to animal or laboratory or clinical testing designed to determine if the modified device remains safe and effective.

A "Special PMA Supplement - Changes Being Effected" is limited to the labeling, quality control and manufacturing process changes specified under 21 CFR 814.39(d)(2). It allows for the addition of, but not the replacement of previously approved, quality control specifications and test methods. These changes may be implemented before FDA approval upon acknowledgment by FDA that the submission is being processed as a "Special PMA Supplement - Changes Being Effected." This procedure is not applicable to changes in device design, composition, specifications, circuitry, software or energy source.

Alternate submissions permitted under 21 CFR 814.39(e) apply to changes that otherwise require approval of a PMA supplement before implementation of the change and include the use of a 30-day PMA supplement or annual postapproval report (see below). FDA must have previously indicated in an advisory opinion to the affected industry or in correspondence with the applicant that the alternate submission is permitted for the change. Before such can occur, FDA and the PMA applicant(s) involved must agree upon any needed testing protocol, test results, reporting format, information to be reported, and the alternate submission to be used.

Alternate submissions permitted under 21 CFR 814.39(f) for manufacturing process changes include the use of a 30-day Notice. The manufacturer may distribute the device 30 days after the date on which the FDA receives the 30-day Notice, unless the FDA notifies the applicant within 30 days from receipt of the notice that the notice is not adequate.

page 1

**POSTAPPROVAL REPORTS.** Continued approval of this PMA is contingent upon the submission of postapproval reports required under 21 CFR 814.84 at intervals of 1 year from the date of approval of the original PMA. Postapproval reports for supplements approved under the original PMA, if applicable, are to be included in the next and subsequent annual reports for the original PMA unless specified otherwise in the approval order for the PMA supplement. Two copies identified as "Annual Report" and bearing the applicable PMA reference number are to be submitted to the PMA Document Mail Center (HFZ-401), Center for Devices and Radiological Health, Food and Drug Administration, 9200 Corporate Blvd., Rockville, Maryland 20850. The postapproval report shall indicate the beginning and ending date of the period covered by the report and shall include the following information required by 21 CFR 814.84:

1. Identification of changes described in 21 CFR 814.39(a) and changes required to be reported to FDA under 21 CFR 814.39(b).

2. Bibliography and summary of the following information not previously submitted as part of the PMA and that is known to or reasonably should be known to the applicant:

   a. unpublished reports of data from any clinical investigations or nonclinical laboratory studies involving the device or related devices ("related" devices include devices which are the same or substantially similar to the applicant's device); and

   b. reports in the scientific literature concerning the device.

If, after reviewing the bibliography and summary, FDA concludes that agency review of one or more of the above reports is required, the applicant shall submit two copies of each identified report when so notified by FDA.

**ADVERSE REACTION AND DEVICE DEFECT REPORTING.** As provided by 21 CFR 814.82(a)(9), FDA has determined that in order to provide continued reasonable assurance of the safety and effectiveness of the device, the applicant shall submit 3 copies of a written report identified, as applicable, as an "Adverse Reaction Report" or "Device Defect Report" to the PMA Document Mail Center (HFZ-401), Center for Devices and Radiological Health, Food and Drug Administration, 9200 Corporate Blvd., Rockville, Maryland 20850 within 10 days after the applicant receives or has knowledge of information concerning:

1. A mix-up of the device or its labeling with another article.

2. Any adverse reaction, side effect, injury, toxicity, or sensitivity reaction that is attributable to the device and:

   a. has not been addressed by the device's labeling; or

   b. has been addressed by the device's labeling but is occurring with unexpected severity or frequency.

3. Any significant chemical, physical or other change or deterioration in the device, or any failure of the device to meet the specifications established in the approved PMA that <u>could not</u> cause or contribute to death or serious injury but <u>are not</u> correctable by adjustments or other maintenance procedures described in the approved labeling. The report shall include a discussion of the applicant's assessment of the change, deterioration or failure and any proposed or implemented corrective action by the applicant. When such events are correctable by adjustments or other maintenance procedures described in the approved labeling, all such events known to the applicant shall be included in the Annual Report described under "Postapproval Reports" above unless specified otherwise in the conditions of approval to this PMA. This postapproval report shall appropriately categorize these events and include the number of reported and otherwise known instances of each category during the reporting period. Additional information regarding the events discussed above shall be submitted by the applicant when determined by FDA to be necessary to provide continued reasonable assurance of the safety and effectiveness of the device for its intended use.

**<u>REPORTING UNDER THE MEDICAL DEVICE REPORTING (MDR) REGULATION</u>.**
The Medical Device Reporting (MDR) Regulation became effective on December 13, 1984. This regulation was replaced by the reporting requirements of the Safe Medical Devices Act of 1990 which became effective July 31, 1996 and requires that all manufacturers and importers of medical devices, including in vitro diagnostic devices, report to the FDA whenever they receive or otherwise become aware of information, from any source, that reasonably suggests that a device marketed by the manufacturer or importer:

1. May have caused or contributed to a death or serious injury; or

2. Has malfunctioned and such device or similar device marketed by the manufacturer or importer would be likely to cause or contribute to a death or serious injury if the malfunction were to recur.

The same events subject to reporting under the MDR Regulation may also be subject to the above "Adverse Reaction and Device Defect Reporting" requirements in the "Conditions of Approval" for this PMA. FDA has determined that such duplicative reporting is unnecessary. Whenever an event involving a device is subject to reporting under both the MDR Regulation and the "Conditions of Approval" for a PMA, the manufacturer shall submit the <u>appropriate reports required by the MDR Regulation</u> within the time frames as identified in 21 CFR 803.10(c) using FDA Form 3500A, i.e., 30 days after becoming aware of a reportable death, serious injury, or malfunction as described in 21 CFR 803.50 and 21 CFR 803.52 and 5 days after becoming aware that a reportable MDR event requires remedial action to prevent an unreasonable risk of substantial harm to the public health. The manufacturer is responsible for submitting a baseline report on FDA Form 3417 for a device when the device model is first reported under 21 CFR 803.50. This baseline report is to include the PMA reference number. Any written report and its envelope is to be specifically identified, e.g., "Manufacturer Report," "5-Day Report," "Baseline Report," etc.

page 3

Any written report is to be submitted to:

    Food and Drug Administration
    Center for Devices and Radiological Health
    Medical Device Reporting
    PO Box 3002
    Rockville, Maryland 20847-3002

Copies of the MDR Regulation (FOD # 336&1336)and FDA publications entitled "An Overview of the Medical Device Reporting Regulation" (FOD # 509) and "Medical Device Reporting for Manufacturers" (FOD #987) are available on the CDRH WWW Home Page. They are also available through CDRH's Fact-On-Demand (F-O-D) at 800-899-0381. Written requests for information can be made by sending a facsimile to CDRH's Division of Small Manufacturers International and Consumer Assistance (DSMICA) at 301-443-8818.

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Sedgwick, Detert, Moran & Arnold LLP, 801 South Figueroa Street, 18th Floor, Los Angeles, California 90017-5556. On August 4, 2008, I served the within document(s):

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP RULE 12(b)(6)**

- ☐ FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.
- ☒ MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.
- ☐ OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via .

Kevin F. Quinn, Esq.  
Brett J. Schreiber, Esq.  
THORSNES BARTOLOTTA McGUIRE  
2550 Fifth Avenue, Suite 1100  
San Diego, California 92103

Attorney For Plaintiff  
Greg Casagranda

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 4, 2008, at Los Angeles, California.

_Jeanine Johnson_

3